SIMMONS v. WESTERN UNION TEL. CO.

1. PLEADINGS—COMPLAINT—IRRELEVANT ALLEGATIONS—DAMAGES—TELEGRAPH CO.—In an action against a telegraph company for damages resulting from mental anguish and physical suffering, the allegations, "and was made sick, forced to take her bed and call in the services of a physician, and expend large sums of money in medicine, care and nursing," are neither irrelevant nor surplusage.

2. TELEGRAPH COMPANY—MENTAL ANGUISH—CONSTITUTION.—THE ACT, *23* STAT., *748,* commonly known as the "mental anguish" act, making telegraph companies liable for damages for mental anguish, is not violative of the 14th amendment of the U. S. Constitution or of art. I., sec. 5, of the Constitution of this State.

Before KLUGH, J., Greenville, July term, 1901. Affirmed.

Action by Maud Simmons and F. M. Simmons, her husband, against Western Union Telegraph Co. From judgment for plaintiff, defendant appeals.

*Messrs. Smythe, Lee & Frost,* and *Geo. H. Feasons,* for appellant, cite: *Mental anguish act is unconstitutional:* 32 S. C., 592; 57 S. C., 325; Cooley on Con. Lim., 484; 165 U. S., 150; 174 U. S., 96; 113 U. S., 27; 19 S. W. R., 910. *Act cannot come under police power:* Tiedeman on Lim. of Pol. Pow., 4, 12, 196, 197, 584; 16 Wall., 62; 38 S. C., 109; 53 S. C., 259; 136 U. S., 313; 165 U. S., 150; 127 U. S.,

209; 105 F. R., 31. *As to the classification under the act:* 19 S. W. R., 912; Cooley Con. Lim., 484; 165 U. S., 154; 47 L. R. A., 338; 24 Am. Dec., 511; 13 F. R., 733; 19 F. R., 694; 105 F. R., 34; 83 N. W. R., 594; 40 N. W. R., 731; 35 At. R., 1065; 53 S. C., 259; 38 S. C., 114; 4 Rich., 329. *Motion to strike out part of par. IX. of complaint should have been granted:* 8 Ency., 2 ed., 394, 581; 5 Ency., 2 ed., 554, 603; 53 S. C., 460; 35 F. R., 548; 40 S. C., 524; 19 S. C., 223; 31 S. C., 49; 13 S. W. R., 169; 61 S. W. R., 421; 23 So. R., 581; 46 N. E. R., 358; 41 N. Y., 544; 54 N. E. R., 775; 77 F. R., 273. *Mental sufferings are too remote to predicate damages upon:* 12 S. W. R., 534; 30 S. W. R., 1105, 1107; 42 S. W. R., 549; 44 S. W. R., 538; 56 S. W. R., 568, 744. *Words "negligently," "unlawfully," are merely conclusions of law:* 34 S. C., 62; 28 S. C., 396; 33 S. C., 217; 35 S. C., 308; 37 S. C., 386; 71 F. R., 21. *There can be no punitive damages unless there be actual damages:* 12 Ency., 2 ed., 29; 60 S. C., 67.

*Mr. B. A. Morgan,* contra, cites: *Stating more than one cause of action is permissible:* 58 S. C., 222. *And allegations of results are permissible:* 57 S. C., 331; 35 S. C., 493; 54 S. C., 498; 53 S. C., 210. *Results are not too remote:* 19 S. E. R., 68; Wood's Mayne on Dam., sec. 39. *Exemplary damages are alleged by charging wanton, &c., conduct of defendant in failure to deliver:* 61 S. C., 189; 57 S. C., 228; 60 S. C., 48. *As to the constitutionality of the mental anguish act:* 125 U. S., 181; 129 U. S., 114; 165 U. S., 155; 127 U. S., 205; 120 U. S., 68; 142 U. S., 339, 386; 165 U. S., 1, 304; 16 S. E. R., 429. *Exceptions as to Judge's charge are too general for consideration:* 52 S. C., 83, 474; 51 S. C., 56; 60 S. C., 67.

April 11, 1902. The opinion of the Court was delivered by

MR. JUSTICE JONES. This was an action for damages for negligently failing to deliver a telegraphic message. The

appeal comes from a judgment for $500 against the defendant.

The first question presented is whether the Court erred in refusing defendant's motion to strike out certain allegations of the complaint. We, therefore, incorporate herein such allegations of the complaint as will make clear the question presented. It is alleged: "That on the 22d day of March, 1901, F. M. Simmons, the husband of the plaintiff, Maud Simmons, was in Greensboro, N. C. The said Maud Simmons had in some way heard her husband was sick, but could not ascertain whether he was slightly or seriously so. To be able to ascertain his condition and to relieve herself of the terrible suspense and stress of mind, she did on said day deliver to the defendant, at Greenville, S. C., for transmission and delivery the following prepaid message, to wit: 'Greenville, S. C., March 22d, 1901. F. M. Simmons, care Keely Institute, Greensboro, N. C. Are you sick? Answer at once. Mrs. F. M. Simmons.'

"(6) This message was promptly delivered by the defendant to the said F. M. Simmons, at Greensboro, N. C.; whereupon he at once caused to be delivered to the defendant, at Greensboro, N. C., for transmission and delivery to the plaintiff, Maud Simmons, and the defendant for such purpose received the following message, to wit: 'Greensboro, N. C., March 22, 1901. Mrs. F. M. Simmons, Greenville, S. C. Have been sick. Am better now. Don't be uneasy. F. M. Simmons.'

"(7) That the defendant had notice of the importance of said message, and of the annoyance, anxiety, pain and suffering that would result to the plaintiff, Maud Simmons, if the message was not transmitted and delivered.

"(8) That the defendant so negligently performed its duty that said message was not transmitted and delivered within a reasonable time, and its conduct in that behalf was so wanton or wilful or reckless that said message has never been delivered.

"(9) The plaintiff, Maud Simmons, received no response

to her said message. That the reason therefor was the negligence, or wantonness, or wilfulness, or recklessness of the defendant in transmitting or delivering the said message addressed to her. That she relied upon the prompt delivery of her message of enquiry before described, and believing it had been delivered and receiving no response, was because of the aforesaid reasons subjected to all the annoyances, anxiety, pain and trouble of mind incident to the conditions thereby created. In consequence of the negligence, or wantonness, or wilfulness, or recklessness of the defendant as aforesaid, she was made to suffer great and grievous mental anguish, pain and suffering, and was made sick, forced to take her bed and call in the services of a physician, and expended large sums of money in medicine, care and nursing, all to her damage $2,000."

The motion was to strike out the words in the last sentence above, "And was made sick, forced to take her bed and call in the services of a physician, and expended large sums of money in medicines, care and nursing," as irrelevant and surplusage, and not legally connected with or resulting from the cause of action set out in the complaint.

We think the motion was properly refused. The allegations were relevant to the cause of action, the action being for damages resulting from mental anguish and physical suffering alleged to have been caused by the defendant's negligence. The Court could not say as matter of law that bodily illness is not a natural and proximate result of negligence in delivering certain messages. It was the province of the jury to determine whether such was the fact upon the testimony given.

The next and main question presented is whether the "mental anguish" act, approved February 20, 1901, violates the 14th amendment to the United States Constitution, in depriving telegraph companies of property without due process of law, and in denying them the equal protection of the laws, and also art. I., sec. 5, of the State Constitution, containing similar provisions. This question

was presented to the Court below on demurrer to the complaint and requests to charge, and is renewed here by proper exceptions.   The act is as follows: "An act to allow damages against telegraph companies doing business in this State for mental anguish or suffering even in the absence of bodily injury caused by negligence in receiving, transmitting or delivering messages.

"Section 1. *Be it enacted* by the General Assembly of the State of South Carolina: That from and after the passage of this act, all telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering even in the absence of bodily injury for negligence in receiving, transmitting or delivering messages.

"Sec. 2. That nothing contained in this act shall abridge the rights or remedies now provided by law against telegraph companies, and the rights and remedies provided for by this act shall be in addition to those now existing.

"Sec. 3. That in all actions under this act the jury may award such damages as they conclude resulted from negligence of said telegraph companies."   23 Stat., 748.

We hold with the Circuit Court, that the act is not unconstitutional in the particulars named.   "Due process of law" means the same as "the law of the land," and as a general rule involves an opportunity before a proper tribunal under established procedure to make contest in defending or enforcing a legal right.   *Den* v. *Hoboken etc. Co.*, 18 How., 272, 15 L. ed., 376; *Pennoyer* v. *Neff*, 5 Otto, 714, 24 L. ed., 572.   The legislature cannot without violating this provision arbitrarily deprive one of his fundamental rights appertaining to life, liberty and property.   But this legislation deprives telegraph companies of no right.   Its design is to compel the performance of a duty imposed by law and their own contract.   They have no right to be negligent in the conduct of their duties and business, which so largely affects the public welfare.   It is neither arbitrary nor oppressive that they shall be liable for such damages, including mental suffering, as a competent legal tribunal shall determine to be

the result of their negligence. Legislation is not unequal nor discriminatory, in the sense of the equality clause of the Constitution, merely because it is special or limited to a particular class. The decisions of the United States Supreme Court establish that the legislature has power to make a classification of persons or property for public purposes, provided such classification is not arbitrary and bears reasonable relation to the purpose to be effectuated, and that the equality clause is not violated, when all within the designated class are treated alike. In the case of Barbier *v.* Connolly, 113 U. S., 27, 5 Sup. Ct. Rep., 357, the Court said: "Class legislation discriminating against some and favoring others is prohibited, but legislation which in carrying out a public purpose is limited in its operation, if within the sphere of its operation it affects alike all persons similarly situated, is not within the (14th) amendment * * * Neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity." In *Soon Hing* v. *Crowley*, 113 U. S., 703, 5 Sup. Ct. Rep., 730, the Court said: "The specific regulations for one kind of business which may be necessary for the protection of the public can never be the just ground of complaint because like restrictions are not imposed upon other business of a different kind. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions or are held entitled to different privileges under the same conditions." In *Missouri Pac. R. R. Co.* v. *Humes*, 115 U. S., 512, 6 Sup. Ct. Rep., 111, the Court said: "There is no evasion of the rule of equality where all companies are subjected to the same duties and liabilities under similar circumstances." In the case of *Railway Co.* v. *Mackey*, 127 U. S., 205, 8 Sup. Ct. Rep., 1161, the Court

affirmed the constitutionality of a Kansas statute imposing upon railroad corporations future liability for damages to employees by negligence of their fellow-servants, notwithstanding no such liability existed against any other person or corporation, because the Court considered that the legislation met a particular necessity, and all railroad corporations without distinction were made subject to this same liability.    The case of *Gulf C. & S. Ry. Co.* v. *Ellis,* 165 U. S., 150, 17 Sup. Ct. Rep., 255; recognized the rule stated, emphasizing that such classification must not be arbitrary— that is·to say, "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed;" or in other language used by the Court, such classification must be "based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection."    In this last mentioned case, the Court applying the principle stated, held unconstitutional a Texas statute providing that a railroad company, failing to pay certain claims under $50 within thirty days after presentation, shall be liable for an attorney's fee not exceeding $10, on the ground that such statute deprived such company of the equal protection of the law, no other delinquent debtor being subject to such penalty.    The Court considered such classification arbitrary because the business of railroads carried with it no special necessity for prompt payment of debts, a duty resting upon all debtors, and, therefore, the classification was not based upon any difference among delinquent debtors which would make a distinction among them natural and reasonable.    In a case recently filed, Porter *v.* Charleston and Savannah Railway Co., this Court held that the "act to require all common carriers to pay all loss of, or damages for loss, damage and breakage of, any articles shipped over their lines, or refuse to do so within a certain time," approved February 25, 1897, did not violate the constitutional provisions cited, the classification with reference to the purpose sought being within the competency of the legisla-

ture.    Further illustrating, the rule stated the United States
Supreme Court, in the case of *St. Louis etc. Ry. Co.* v.
*Mathews*, 165 U. S., 1, 17 Sup. Ct. Rep., 243, held (in ac-
cord with the case of *McCandless* v. *R. R. Co.*, 38 S. C.,
116,) that a statute making railroad companies liable for
property destroyed by fire communicated by their locomo-
tive engines, did not violate the 14th amendment, even
though the liability did not depend upon any negligence of
the railroad company.    In that case, the special legislation
as to railroad liability had relation to the prevention of a
peculiar danger arising from the operation of the locomo-
tives, and hence has a reasonable basis for classification.    It
will be observed that in this case, as in Railway Co. *v.*
Mackey, *supra,* the property of the classification for the im-
position of special liability was not affected by the fact that
there were other common carriers operating with steam, as,
for example, steamboat companies, which might communi-
cate fires, or whose employees might sustain injuries through
the negligence of fellow-servants.    This shows that a classi-
fication need not include all engaged in a *general* business, as
the business of carrying freight and passengers, but may
simply embrace a more limited class who carry freight and
passengers in a particular way, or by particular instrumen-
talities.    Testing the question before us by the principles
stated, we think the act is constitutional.    Telegraph com-
panies as carriers of intelligence through the agency of elec-
tricity are peculiarly the subject of distinct classification.
Their business consists in the speedy transmission of intelli-
gence without regard to distance.    They subserve a useful
public purpose, when and because they communicate news
with greater dispatch than any other agency.    Such busi-
ness when conducted in accordance with the duty imposed
by the franchises or privileges granted to them promote pub-
lic safety, education, convenience, prosperity, and adds to
the peace, comfort and happiness of the thousands who rely
on this means of communication in time of need or distress.
It is surely within legislative power to constitute them a class

by themselves, and insure the performance of duties so closely interwoven with the public welfare, by imposing liability for all damages resulting from their negligence, the classification is based upon a particular necessity arising out of the peculiar duties assumed by such companies. It is argued that the legislation is discriminatory, because the statute does not also include telephone companies or other agencies for the transmission of news. This view is answered by the principle stated in Rwy. Co. *v.* Mackey, *supra,* as telegraph companies are as distinct from telephone companies as a railroad company is distinct from a steamboat company. In the case of a telegram, the telegraph company delivers the sender's message; in the case of a message by telephone company, the sender delivers his own message to the person and in the language of his own choice. In one case, the telegraph company actively controls the receiving, transmission and delivery of the message, in the other, there is no control by the telephone company except in the mere furnishing of the mechanical instruments of communication for the patron's use. It is, therefore, manifest that legislation, designed to promote care in the receiving, transmission and delivery of messages, may have a just and reasonable relation to telegraph companies, and be wholly inapplicable to telephone companies.

The foregoing disposes practically of all the material questions presented. The exceptions have all been considered by the Court and are overruled.

The judgment of the Circuit Court is affirmed.