CAPERS v. WESTERN UNION TELEGRAPH CO.

1. Telegrams—Damages—Pleadings.—It is essential to a recovery based on the special nature of a telegram that knowledge by the defendant of its special importance should appear from the words of the message itself, or that it be alleged and proved that defendant was otherwise informed of the special importance.

2. Ibid.—Ibid.—Ibid.—In suit for failure to deliver a telegram in time to have money deposited to pay a check, it is necessary to allege that the addressee would have delivered the money in time to the person designated to convey it to bank, and that such person would have conveyed it in time.

3. Ibid.—Mental Anguish—Damages.—The mental anguish statute of this State does not authorize recovery for feelings of disappointment, annoyance and vexation which the sender of a telegram would naturally feel because of the dishonor of his check by reason of failure to deliver his telegram in time, but the statute is confined to social or personal matters.

Before Dantzler, J., Beaufort, May, 1904.   Reversed.

Action by W. E. Capers against Western Union Telegraph Co.   From Circuit order refusing motion to strike out certain parts of complaint, defendant appeals.

*Messrs. Smythe, Lee & Frost* and *Geo. H. Fearons,* for appellant, cite: *Complaint should set forth meaning of telegram and its relation to the loss:* 37 N. E., 601; 41 At. R., 710; 84 N. W., 462; 53 S. W., 900; 46 N. E., 38; 27 Ency., 1062.   *Complaint should allege that Butler and the conductor would have furnished and conveyed the money:* 54 S. W., 826; 83 Ky., 104; 19 S. C., 223; 21 S. E., 457; 40 S. C., 527; 34 S. C., 62.

*Mr. C. C. Tracy,* contra, cites: *Motion papers should state particulars verbatim:* Fetnam on Trial Proc., 603; Code of Proc., 181; 51 S. C., 495; 48 S. C., 179; 6 Ency. P. & P., 274; 63 S. C., 363.   *The complaint is sufficient:* 62 S. C., 222; 65 S. C., 430, 222; 7 Ency. P. & P., 275; 65 S. C., 352;

50 S. C., 54. *The mental anguish statute covers this case:* 69 S. C., 531.

March 7, 1905. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This appeal is from an order of the Circuit Judge refusing a motion to make the complaint more definite and certain, and to strike out an allegation of the complaint as to mental anguish. The complaint is founded on the alleged negligence of the defendant in failing to deliver the following telegram:

"Beaufort, S. C., 2-29, 1904. To C. W. Butler. No letter received. Send to Yemassee conductor in morning. W. E. Capers."

Obviously the telegram gave no intimation of what was to be sent to the conductor by the addressee, and in what respect it was specially important. It is essential to a recovery based on the special nature of the telegram, that knowledge by the defendant of its special importance should appear from the words of the message itself, or that it be alleged and proved that defendant was otherwise informed of the special importance. The only allegation as to knowledge of the defendant is found in the fifth paragraph: "That this defendant, well knowing the importance of delivering such message or telegram before the train went over the Atlantic Coast Line Railroad to Yemassee, so wilfully, wantonly and carelessly neglected its duty in that behalf that it did not deliver such electric message or telegram to the said C. W. Butler until 11 o'clock in the forenoon of the said 1st day of March, 1904, when it was too late to send to Yemassee conductor." In the general sense here alleged, the defendant is, of course, charged with the knowledge of the importance of the prompt delivery of all telegrams. There is no allegation of knowledge of the significance of this telegram or the special importance of its prompt delivery, except the general knowledge that it was

important to deliver it before the conductor left. The motion to make the allegations on this point more definite and certain should have been granted. *Mood* v. *Tel. Co.,* 40 S. C., 524, 19 S. E., 67; 21 Ency. P. & P., 516; *Primrose* v. *Tel. Co.,* 154 U. S., 1, 38 L. ed., 883.

Even if the plaintiff had expressly alleged that the message meant a direction to C. W. Butler to send a certain sum of money by the conductor to the Beaufort Bank to prevent a dishonor of plaintiff's check drawn on that institution, it is evident the plaintiff would have stated no cause of action against the defendant for the injury resulting from the dishonor of his check, without an allegation that Butler would have sent the money to the bank by the conductor, and he would have undertaken to deliver it if the telegram had been delivered in time. The principle is covered by *Wallace* v. *R. R. Co.,* 34 S. C., 62, 12 S. E., 815. If this allegation is made at all, it is made only in an inferential and very indefinite form in the sixth paragraph of the complaint, which is as follows: "That in consequence of the delay in the delivery of said message to the said C. W. Butler, caused by the wilful, negligent and careless conduct of the defendant, a check given by the said plaintiff on the Beaufort Bank was dishonored for lack of funds to meet the same, the said telegram referring to a deposit to be made by the said C. W. Butler to the credit of plaintiff, which deposit was made but too late to prevent such dishonor." The clause, "referring to a deposit to be made by the said C. W. Butler to the credit of plaintiff, which deposit was made, but too late to prevent such dishonor," is far from a direct allegation that Butler would have sent the money by the conductor in response to the message. Material allegations should be made by direct averment and not by inference. 6 Ency. P. & P., 269. A party is aggrieved and entitled to have the pleading made more definite and certain when he is not informed by direct allegations what case he must prepare to meet. The application to make the complaint more

definite and certain in the particulars stated in the notice
of motion should have been granted.

The remaining question is, whether the plaintiff's allega-
tion "that he suffered thereby great mental anguish and
distress," should be stricken out as irrelevant. As we
understand, the action is to recover both actual and
punitive damages for failure to promptly transmit
and deliver a telegram ordering money to be sent to
protect plaintiff's check, which in consequence of the delay
was dishonored. This was a breach of duty from which
direct pecuniary injury would ordinarily flow, and the ques-
tion is whether the mental anguish statute was intended to
authorize a recovery for the feeling of disappointment,
annoyance and vexation which the sender or addressee would
naturally feel because of the dishonor of his check, or other
business disappointment. So far as we can discover, when
this question has arisen before the courts which sustain reco-
veries for mental anguish independent of statute, every deci-
sion has been to the effect that such recoveries must be re-
stricted to failure to deliver telegrams relating to social
matters. *Robinson* v. *Tel. Co.,* 68 S. W., 656 (Ky.); *De
Voegler* v. *Tel. Co.,* 30 S. W., 1107 (Tex.); *Ricketts* v.
*Tel. Co.,* 30 S. W., 1105 (Tex.); 2 Shearman & Redfield on
Negligence (5th ed.), sec. 756. Indeed, the doctrine of
mental anguish in telegraph cases seems to have had its
origin in the following paragraph from Shearman & Red-
field on Negligence (3d ed., sec. 605), in which such dam-
ages are suggested, but to be limited to personal or domestic
matters not connected with business: "In case of delay or
total failure of messages relating to matters not connected
with business, such as personal or domestic matters, we do
not think that the company in fault ought to escape with
mere nominal damages on account of the want of strict
commercial value in such messages. Delay in the anounce-
ment of a death, an arrival, the straying or recovery of a
child, and the like, may often be productive of an injury to

the feelings, which cannot easily be estimated in money, but for which a jury should be at liberty to award fair damages."

It is true, the doctrine in this State is based on a statute very broad in its general terms:

"All telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury, for negligence in receiving, transmitting or delivering messages.

"Nothing contained in this section shall abridge the rights or remedies now provided by law against telegraph companies, and the rights and remedies provided for by this section shall be in addition to those now existing.

"In all actions under this section the jury may award such damages as they conclude resulted from negligence of said telegraph companies." (Code, 1902, vol. 1, sec. 2223.)

If the meaning of the statute is clear, the courts have nothing to do with the consequences of enforcing it. In the construction of this statute, however, we have to interpret the expression "mental anguish" as a legal term, and endeavor to ascertain its signification, and the limitation of its meaning in a legal sense as used in this statute, as distinguished from the meaning it might have in the refinements of etymology. Manifestly the statute was remedial. The courts of several States of the Union had adopted in telegraph cases the doctrine of damages for mental anguish as to social and personal matters, as distinguished from business transactions. A contrary view had been taken by the courts of a number of other States. In *Lewis* v. *Tel. Co.*, 57 S. C., 325, 35 S. E., 556, the question was squarely presented to this Court, and upon the consideration of the authorities on both sides it was decided that the new doctrine should be rejected. The opinion in this case was filed April 11, 1900. In December, 1901, the act now under consideration was passed, and it cannot be doubted that the statute was intended to change the law of the State as laid down in *Lewis* v. *Tel Co.*, and to establish the doctrine of damages for

mental anguish in telegraph cases, with its limitations, as it had been established by the courts of other States. When the statute was passed, wherever in text book or judicial utterance "mental anguish" was recognized as a ground of action against a telegraph company, the term was limited to apply to social and personal matters, and not extended to business affairs. This was the scope and limitation of the legal meaning of the term, and there is the strongest presumption that the General Assembly intended the terms to have the same meaning and limitation in this State. The second clause of the act does not affect the question. It only means that where mental anguish, in the sense in which the expression is used in the statute, has resulted from the negligence of a telegraph company in receiving, transmitting or delivering a message, then there may be a recovery for such mental anguish, in addition to the use of any other remedy or the enforcement of any other right recognized before the passage of the act; but it does not attempt to define the legal meaning of mental anguish or indicate the limits of its application. The decision in *Willis* v. *Tel. Co.,* 69 S. C., 531, does not affect this question. There the Court only refused to sanction a distinction of the utmost refinement between anxiety and other kinds of mental suffering, and between negligence which prolongs suffering and that which originates it.

But there is another view which is still more conclusive. When doubtful questions of construction arise, it is the duty of courts to give to statutes an interpretation which accords with the Constitution, in preference to one that would be in violation of it. The statute now under consideration, was held constitutional in *Simmons* v. *Tel. Co.,* 63 S. C., 425, 41 S. E., 521, which was an action for damages for failure to promptly deliver a telegram to the plaintiff concerning the illness of her husband. If the statute is limited in its application to cases of that and similar character, there is a clear ground of classification distinguishing telegraph companies

from all other common carriers, including even telephone companies. The question whether the statute would be constitutional if construed to embrace mental suffering for business disappointments did not arise and was not considered in that case. If the statute should be held to cover mental suffering for business miscarriages, we can see no ground for distinction between telegraph companies and other common carriers, or agencies for the transmission of money or goods. When an express company, for example, fails to transmit money delivered to it in pursuance of a telegram, well knowing that it was sent to prevent the dishonor of a check, upon what principle of fair classification could it be exempted from liability for damages for the mental suffering or vexation consequent upon the dishonor of the paper, while the telegraph company is held liable to pay for such suffering arising from its failure to deliver the telegram in time? It seems clear, if the unlimited meaning for which the plaintiff contends is given to the terms used, it would render the constitutionality of the law, to say the very least, extremely doubtful; and this is a very cogent reason for rejecting such meaning. To accept it would be to impute to the General Assembly the purpose to annul the rules established for centuries as to the measure of damages for violation of duty producing financial loss from simple negligence, and establishing another rule which would disturb business relations and bring disaster to business enterprise, and to single out one particular kind of business to the exemption of all others for the application of the ruinous and startling innovation. We have endeavored to show the Court is not forced to the conclusion, and that the statute has no application to the breach of duty here alleged. The words "he suffered thereby great mental anguish and distress" should, therefore, have been stricken from the complaint.

The judgment of this Court is, that the judgment of the Circuit Court be reversed.

MR. JUSTICE GARY *did not sit in this case on account of illness.*