**FIDELITY GUARANTEE MORTGAGE CORPORATION**

v.

**CONNECTICUT HOUSING FINANCE AUTHORITY.**

Civ. No. H–81–999.

United States District Court, D. Connecticut.

Feb. 9, 1982.

Irving S. Ribicoff, Paul Alan Rufo, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for plaintiff.

Albert Zakarian, Nancy DuBois Wright, Michael C. Poliner, Day, Berry & Howard, Hartford, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

CLARIE, Chief Judge.

The plaintiff is a mortgage loan institution incorporated in Massachusetts and authorized to do business in Connecticut. The defendant is a public agency of the State of Connecticut empowered to issue bonds to provide funds for housing loan purposes. The plaintiff has brought this suit seeking preliminary and permanent injunctive relief against the enforcement of a regulation of the defendant, which requires that mortgage lenders seeking to qualify for the use of the defendant's funds must have had at least three years' prior business experience within the State of Connecticut in the making of mortgage loans. The plaintiff contends that this three-year requirement of doing business within the State violates the Due Process, Equal Protection, and Commerce Clause provisions of the United States Constitution. The Court finds that said regulation withstands constitutional scrutiny and accordingly denies the plaintiff's request for injunctive relief.

### Facts

The Connecticut Housing Finance Authority, ("CHFA"), was established by the Connecticut General Assembly in 1969 in order to alleviate the shortage of housing for low and middle income families and to encourage those families to settle in designated urban areas within the State.[1] To achieve this end, CHFA is empowered to issue bonds the proceeds of which are made available as mortgage loans to qualified families. Because CHFA is a political subdivision of the State, the interest paid to bondholders on the bonds is tax exempt under provisions of the Internal Revenue Code.[2] CHFA is thus able to offer the bonds at lower interest rates than would have to be paid by a private entity. This, in turn, enables CHFA to charge lower rates of interest on the mortgage loans to qualified borrowers. CHFA sets the rate charged on its mortgages at a rate which slightly exceeds the interest paid on its bonds to the extent necessary to cover its administrative operating costs. It recently sold $200,000,000 of such bonds, the proceeds of which the Authority is planning to make available to mortgage borrowers at an annual interest rate of 13½.

The plaintiff is a mortgage loan institution, incorporated in Massachusetts, which has been in business since its incorporation in 1977. The plaintiff commenced business in Connecticut on August 15, 1980, when it opened an office in Glastonbury. On November 17, 1980, the plaintiff obtained a Certificate of Authority from the Secretary of State to do business in this State. The plaintiff recently opened a second office in Milford, Connecticut.

As a mortgage loan institution, the plaintiff is primarily engaged in originating, processing, closing and servicing mortgage loans. The plaintiff rarely retains the mortgages it originates. Instead, it sells these mortgages to interested buyers, and they are generally insured by the Federal Housing Administration or guaranteed by the Veteran's Administration. Many of the plaintiff's mortgages are acquired by the Federal National Mortgage Association or the Government National Mortgage Association. At the time of the court hearing, the plaintiff was charging an annual interest rate of 15½% on its mortgage loans. The plaintiff argues that it will be at a serious competitive disadvantage if it is denied access to CHFA's 13½% annual interest rate mortgages.

### Discussion of the Law

CHFA has elected to make its mortgage money available to borrowers only through lending institutions doing business in the State. These lending institutions are sub-

1. Conn.Gen.Stat. § 8–241 et seq. (1980).

2. 26 U.S.C. §§ 103, 103A (1981).

ject to certain regulations promulgated by CHFA. The regulation being challenged became effective on November 3, 1981. It provides that in order to become a "participating lender" in the CHFA Home Mortgage Program, a lending institution must "have three (3) years experience in making mortgage loans in Connecticut in the regular course of its business."

The defendant advances several arguments in support of the three-year requirement. In the first place, it contends that three years' experience in Connecticut is necessary in order for CHFA to obtain an accurate picture of the integrity or competence of a particular lending institution. It is difficult for the defendant to obtain similarly accurate information based on a lender's performance in another state. This information or the "track record" of a particular institution, enables CHFA to insure that lower and middle income families are dealt with only by reliable lenders. It also safeguards the program itself from excessive administrative costs and the possible loss of the tax exempt status for the CHFA bonds if the requirements of the Internal Revenue Code are not complied with by the participating lenders. The defendant also maintains that three years' experience in Connecticut is necessary in order to gain familiarity with Connecticut land law and local real estate procedures and customs. Finally, the defendant claims that doing business in Connecticut as a mortgage lender for three years is an indication of a serious commitment to continue to make mortgage loans in the State.

The plaintiff, on the other hand, notes that it has been engaged successfully in mortgage banking practices in Massachusetts since 1977 and contends that this experience is sufficient to establish its track record as a reliable mortgage lending institution. In addition, the plaintiff rejects the defendant's argument that three years of experience in Connecticut is necessary in order to become familiar with Connecticut real estate practices and procedures. The plaintiff asks this Court to find that the three-year requirement is violative of the Due Process, Equal Protection and Commerce Clause provisions of the United States Constitution.

## A. *Due Process*

The plaintiff's due process claim does not require extended discussion. In order to withstand constitutional scrutiny on due process grounds, an economic regulation need only bear a rational relation to a legitimate state purpose. *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978); *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). In considering due process claims, the judiciary does not "sit as a 'superlegislature to weigh the wisdom of legislation' . . . ." *Ferguson v. Skrupa*, 372 U.S. 726, 731, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963) (citation omitted). As noted in *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), "[t]he day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." *Id.* at 488, 75 S.Ct. at 464. It cannot be said that the three-year requirement bears no rational relationship to CHFA's articulated purpose of insuring that low- and middle-income borrowers are dealt with by competent lending institutions and guarding against the possibility that irregular business practices will result in the loss of the tax-exempt status for CHFA bonds with a resulting increased administrative cost to CHFA. Accordingly, the Court finds that the three-year requirement does not violate constitutional due process.

## B. *Equal Protection*

Courts are similarly reluctant to overturn economic regulations on equal protection grounds. They generally limit their inquiry to a determination of whether a classification in a regulation is rationally related to the achievement of articulated statutory purposes. *New Orleans v. Dukes*,

427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976).

"States are accorded wide latitude in the regulation of their local economics under their police powers, and rational distinctions can be made with substantially less than mathematical exactitude .... [I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Id.* at 303–04, 2516–17.

Here there is no discrimination between in-state and out-of-state lending institutions; they are both treated as being on equally eligible footing. If the Court assumes that the challenged classification is between those firms which have done business in the State for three years and those firms which have not, it is clear that the three-year requirement is neither "invidious" nor "wholly arbitrary" and therefore does not deny affected parties equal protection of the laws. The requirement applies equally to both groups.

### C. *Commerce Clause*

 The parties devoted their greatest attention, both in oral argument as well as in briefs submitted to the Court, to the issue of whether the three-year requirement constitutes an impermissible burden on interstate commerce. It is well established that the Commerce Clause aims to preserve among the various states a common market in which a state cannot erect barriers to the free flow of raw materials and finished products from other states. *Great A&P Tea Co. v. Cottrell*, 424 U.S. 366, 370–71, 96 S.Ct. 923, 927–28, 47 L.Ed.2d 55 (1976). It is also well established that some state regulation of interstate commerce is permitted by the Commerce Clause. *Cooley v. Board of Wardens*, 53 U.S. 298, 12 How. 299, 13 L.Ed. 996 (1851). A myriad of cases have attempted to draw the line between permissible and impermissible state regulation of interstate commerce. An analysis of these cases is not necessary under the present facts, however, in view of the fact that the activity challenged by the plaintiff is not state regulation of interstate commerce, but rather state participation in the market place according to rules promulgated by the state.

In *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), the Supreme Court drew a distinction between state regulation of interstate commerce and state participation in interstate commerce and found that the Commerce Clause was intended to reach only regulatory activity by the state. At issue in *Hughes* was a system instituted by Maryland to rid its highways of abandoned motor vehicles. As originally instituted, the Maryland plan offered a "bounty" to scrap processors for the destruction of abandoned vehicles called "hulks," and required only minimal documentation of clear title to the vehicle. Subsequently, the law was amended to require stricter documentation of title from out-of-state processors seeking a bounty than that required of in-state processors. Suit was instituted by an out-of-state processor who argued that the change in the documentation requirement constituted an impermissible burden on interstate commerce. The Court rejected that argument, noting that:

"We do not believe the Commerce Clause was intended to require independent justification for such action. Maryland entered the market for the purpose, agreed by all to be commendable as well as legitimate, of protecting the State's environment. As the means of furthering this purpose, it elected the payment of state funds—in the form of bounties—to encourage the removal of automobile hulks from Maryland streets and junkyards. It is true that the state money initially was made available to licensed out-of-state processors as well as those located within Maryland, and not until the 1974 amendment was the financial benefit channeled, in practical effect, to domestic processors. But this chronology does not distinguish the case, for Commerce Clause purposes, from one in which a State offered bounties only to domestic processors from the start .... Nothing in the purposes animating the Commerce Clause prohibits a

State, in the absence of congressional action, from participating in the market and exercising the right to favor its own citizens over others." *Id.* at 809–10, 96 S.Ct. at 2497–98.

Relying on *Hughes,* the Court in *Reeves, Inc. v. Stake,* 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980), rejected a Commerce Clause challenge to a decision by South Dakota to give priority on sales of cement from a state-owned and state-run cement plant to in-state residents. The *Reeves* Court found "no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market." *Id.* at 437, 100 S.Ct. at 2277. The Court cited three reasons for allowing states a free hand in the marketplace. In the first place, the Court noted that restraint was counseled by considerations of state sovereignty, where the activity of a state in the market is taken on behalf of the people of the state. *Id.* at 438, 100 S.Ct. at 2278. In addition, the Court recognized the right of any trader or manufacturer to exercise independent discretion over those persons with whom he will deal. *Id.* at 438–39, 100 S.Ct. at 2278–79. Finally, the Court noted that state proprietary activities can be, and often are subject to the same governmental restrictions as those imposed on private parties and therefore "should similarly share existing freedoms from constraints, including the inherent limits of the Commerce Clause." *Id.* at 439, 100 S.Ct. at 2279.

█ The Home Mortgage Program, like the cement plant in *Reeves,* was created "because the free market had failed adequately to supply" the needs of the citizens. 447 U.S. at 445–46, 100 S.Ct. at 2281–82. Unlike the cement plant in *Reeves* or the bounty program in *Hughes,* however, the three-year requirement of the Home Mortgage Program does not discriminate directly, either by design or effect, against out-of-state concerns. The three-year requirement is facially neutral. Indeed, the defendant has offered evidence of instances where an out-of-state firm has qualified to participate in the program and an in-state

firm has failed to qualify. Thus, even if the extent of the burden on interstate commerce were an important factor in cases where a state is acting as a market participant, which *Hughes* and *Reeves* hold is not the case, it is clear that the requirement that a lending institution do business in Connecticut for three years before participating in the CHFA program is even less objectionable for Commerce Clause purposes than the Maryland "bounty" program and South Dakota's policy with respect to sale of cement to out-of-state purchasers.

Accordingly, the Court sustains the three-year requirement on all three constitutional grounds. The plaintiff has therefore failed to establish a probability of success on the merits, *American Trucking Associations, Inc. v. O'Neill,* 522 F.Supp. 49 (D.Conn. 1981), and the motions for preliminary and permanent injunctive relief are denied.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court, pursuant to Rule 52(a), Fed.R.Civ.P.

SO ORDERED.