21975

STATE of South Carolina, Ex Relatione T. Travis MEDLOCK, Attorney
General, Appellant, v. SOUTH CAROLINA STATE FAMILY FARM
DEVELOPMENT AUTHORITY, Respondent.

(306 S. E. (2d) 605)

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod* and *Deputy Atty. Gen. Frank K. Sloan,* Columbia, *for appellant.*

*Randall T. Bell* and *William E. Craven III,* of *McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble,* Columbia, *for respondent.*

Aug. 11, 1983.

NESS, Justice:

This action tests the validity of Act No. 179, § 15, the Family Farm Development Act, now codified at S. C. Code Ann. § 46-47-10 et seq. (Cum. Supp. 1982). The trial judge held that the Act constitutional, and we affirm.

The Act empowers the Authority to issue revenue bonds to provide loans to low and moderate income farmers through three methods of financing: (1) direct loans, (2) loans to lending institutions, and (3) loan purchases. Under the first method, the Authority may issue bonds and loan the proceeds to qualified farmers. The second method allows the Authority to lend bond proceeds to qualified lending institutions; the institution must then lend to low and moderate income farmers within a specified time. Under the third method, the Authority may use bond proceeds to purchase loans made to low and moderate income farmers from qualified lending institutions.

Appellant first contends the Act violates Article III, § 17 of the South Carolina Constitution requiring that legislative enactments relate to only one subject.

The purpose of Article III, § 17 is to (1) prevent the General Assembly from being misled into passing bills containing provisions not indicated in their titles, and (2) apprise the public of the subject of the proposed legislation, giving it an opportunity to be heard. *Maner v. Maner,* S. C., 296 S. E. (2d) 533 (1982). We have liberally construed this provision to uphold legislation where practicable, and have consistently held the provision's requirements are satisfied when the title of an act states the general subject of the legislation and the provisions of the act are germane to that subject. *Hercules, Inc. v. The. S. C. Tax Commission, et al.,* 274

S. C. 137, 262 S. E. (2d) 45 (1980); *McCollum v. Snipes, et al.*, 213 S. C. 254, 49 S. E. (2d) 12 (1948). A statute will not be declared unconstitutional unless it clearly violates the constitution beyond reasonable doubt. *Hercules, Inc. v. The S. C. Tax Commission, supra.*

The subject of Act No. 179 is the authorization of bonded indebtedness to fund various government programs. Section 15 empowers the Authority to issue bonds to provide loans for low to moderate income farm families, and is thus germane to subject of the act. Moreover, the content of § 15 is specifically referred to in the title.[1] We hold the Act falls within constitutional limits.

---

[1] "An Act To Amend Act 1377 Of 1968, As Amended, Relating To The Issuance Of State Capital Improvement Bonds, So As To Authorize The Issuance Of Additional Bonds; To Reduce Authorizations For The Department Of Education And The Department Of Mental Health; To Impose Requirements On Governing Boards Or Commissions On The Budget And Control Board And The Joint Bond Review Committee Before Permanent Improvement Projects Authorized In Capital Improvement Bond Acts May Be Established And Implemented; To Require Confirmation Of The General Assembly For Projects Not Approved For Implementation Within A Certain Time; To Provide For Deauthorization Of Projects; To Require Review Of A Detailed Plan Identifying Sources Of Funds For Project Operation; To Require Updates Of Operating Cost Financing Plan And Submission Of Advice Of The Updates To Certain Boards And Committees And Recommedation Of Appropriate Responses To The Updated Plan; To Require All State Agencies And Institutions To Submit Overall Permanent Improvement Plans When Seeking Approval Or Implementation Of Permanent Improvement Projects And To Define The Content Requirements Of The Plans; To Provide That Issuance Costs Shall Be Paid From The Proceeds Of The Bonds And To Provide For The Allocation Of The Costs Among Agencies And Institutions Receiving Authorizations; To Provide That Architectural And Engineering Study Costs Shall Be Contained In The Project Authorization; To Amend Section 4-29-10, As Amended. Code Of Laws Of South Carolina, 1976, Relating To Industrial Development Projects, So As To Include Within The Definition Of 'Project' Any Enterprise Engaged In Commercial Business, Including But Not Limited To, Wholesale, Retail Or Other Mercantile Establishments; Office Buildings; Computer Centers; Tourism, Sports And Recreational Facilities; Convention And Trade Show Facilities; And Certain Public Lodging And Restaurant Facilities, And To Define 'Tourism, Sports And Recreational Facilities'; To Provide That Any Portion Of The Definition Of 'Project' Is Severable; To Amend Section 4-29-60, As Amended, Relating To Industrial Development Projects, So As To Provide That Before Undertaking A Project The County Or Municipal Corporation Governing Body Shall Find Among Other Things That The Project Is Anticipated To Benefit The Locality By Providing Services, Employment, Recreation Or Other Public Benefits Not Then Provided; To Require The State Treasurer To Report To Certain Committees Immediately After Selling General Obligation Bonds Or Anticipation

Appellant next contends the Act violates Article X, § 11 of the South Carolina Constitution because it permits the pledging of the State's credit for the benefit of private individuals.

We have held that there is no lending of the State's credit unless its general credit and taxing powers are pledged. *Johnson v. Piedmont Municipal Power Agency,* 277 S. C. 345, 287 S. E. (2d) 476 (1982); *State, ex rel. McLeod v. Riley,* 276 S. C. 323, 278 S. E. (2d) 612 (1981). In this case, the act itself specifically prohibits resort to the State's general taxing powers at § 46-47-180:

> "The bonds or other obligations of the authority shall not be a debt nor create an obligation of the State or its political subdivisions—. Any bonds or obligations issued by the authority shall be special obligations of it. Neither the State nor any political subdivision shall be liable on the bonds nor shall they be payable out of any funds other than those of the authority pledged and all bonds and other obligations issued pursuant to this chapter shall contain on the face a statement to such effect."

In *Bauer v. S. C. State Housing Authority,* 271 S. C. 219, 246 S. E. (2d) 869 (1978), we held a similar provision sufficient to protect the State from pecuniary liability. This statute affords the same protection, thus we find appellant's exception without merit.

---

Notes; To Amend Act 488 of 1965, As Amended, Relating To Student Housing At Winthrop College, So As To Provide That Student Housing Facilities Shall Include All Necessary Related Facilities, To Increase The Amount Of Bonds Which May Be Issued And The Procedure For Authorizing The Issuance Of Them And To Eliminate A Proviso Requiring Bonds To Be Issued On A Parity With Outstanding Bonds; To Amend The 1976 Code By Adding Chapter 14 To Title 11, So As To Provide For The Defeasance Of Outstanding Bonds, Notes Or Other Obligations; To Amend Act 761 Of 1976, As Amended, Relating To The Joint Bond Review Committee, So As To Provide For Four Additional Members; To Provide For Priorities For Capital Improvement Projects To Be Funded By The Issuance Of Bonds. *To Amend The 1976 Code By Adding To Title 46 Chapter 47, The South Carolina State Family Farm Development Authority Act;* And To Amend Section 11-35-3020, Relating To Competitive Sealed Bidding Procedures, So As To Provide That A Using Agency's Invitation For Bids Shall Include A Requirement That Any Bidder Or Offeror Shall Set Forth The Name And Location Of The Place Of Business Of Each Subcontractor Who Will Perform Work Or Service To The Prime Contractor And Who Will Fabricate And Install Work In Amounts Exceeding Certain Percentages Of The Contractor's Total Bid." (Emphasis added).

Next, appellant argues the Act denies equal protection because it provides loan benefits for a limited group.

The requirements of equal protection are satisfied if (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis. *Bauer, supra.*

The determination of whether a classification is reasonable is initially one for the legislature and will not be set aside unless plainly arbitrary. *State v. Solomon,* 245 S. C. 550, 141 S. E. (2d) 818 (1965); *Glens Falls Insurance Co. v. City of Columbia,* 242 S. C. 237, 130 S. E. (2d) 573 (1963). In support of the classification, the legislature found that low and middle income farmers cannot acquire the resources necessary to maintain the State's vital farming industry. The classifications are designed to provide low and middle income farmers a means of acquiring the needed resources. Since appellant presented no evidence refuting this finding, we conclude the classification is reasonable. *Bauer, supra.*

Appellant asserts that because the loan limit to any one farmer or farm family is $625,000.00, the Act does not serve the stated purpose of benefitting low to moderate income farm families. Given the high capital expenditures for land and machinery required of the average farmer, we cannot say the Act is not rationally related to its intended purpose.

Next, appellant contends the Act violates Article I, § 3 of the South Carolina Constitution because it does not serve a public purpose.

We have recognized that legislation which aids and promotes agriculture serves a valid public purpose. *S. C. Farm Bureau Marketing Association v. S. C. State Ports Authority,* S. C., 293 S. E. (2d) 854 (1982). The public purpose is not destroyed merely because benefits will accrue to private individuals, nor is it necessary for the legislation to serve all the people. *Bauer, supra; Anderson v. Baehr,* 265 S. C. 153, 217 S. E. (2d) 43 (1975). The program will directly benefit a substantial segment of the State's farmers and the State as a whole by improving the farm economy. We hold the Act serves a valid public purpose.

Finally, appellant maintains the Act is unconstitutional because it delegates the performance of governmental functions to private persons and institutions.

Under the Act, the Authority may delegate the implementation of the loan programs to governmental agencies and financial institutions, but the Authority retains ultimate responsibility for the programs through regulation and contractual agreement with the lenders. A lending institution cannot loan Authority funds to someone not in the prescribed class, nor to an unworthy credit risk. All loans must be made at an interest rate sufficient to pay principal and interest on the bonds and the Authority's administrative costs. The Authority, not the lending institution, must determine that each loan is not otherwise available to the borrower on reasonably equivalent terms. The Authority determines whether and on what terms a loan may be assumed, whether to include a due-on-sale clause, and the method of securing the loan. Each loan must comply with all the Authority's regulations. In short, the Authority maintains final control over the management of its loan programs, while delegating the ministerial duties for which lending institutions possess the necessary organization and experience.

We have held that delegation of administrative and ministerial duties is not unconstitutional. *Clarke v. S. C. Public Service Authority, et al.*, 177 S. C. 427, 181 S. E. 481 (1935); *Green, et al. v. City of Rock Hill, et al.*, 149 S. C. 234, 147 S. E. 346 (1929). Since the legislature in this instance delegated only ministerial duties, the Act is not violative of Article III, § 1 of the South Carolina Constitution.

Affirmed.

HARWELL, J., and PAUL M. MOORE, A.A.J., concur.

LEWIS, C. J., and GREGORY, J., dissent.

LEWIS, Chief Justice (dissenting):

The majority opinion reaches the conclusion that Act No. 179 of the 1981 Acts of the General Assembly does not offend Article III, Section 17, of the South Carolina Constitution. I disagree and, therefore, dissent.

Article III, Section 17, of the Constitution states:

Section 17. One subject.

Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title.

In *Colonial Life and Accident Insurance Company v. South Carolina Tax Commission*, 233 S. C. 129, 103 S. E. (2d) 908, the court referred to the purpose of Article III, Section 17 as follows:

Its purpose is to prevent the General Assembly from being misled into the passage of bills containing provisions not indicated in their titles, and to apprise the people of the subject of proposed legislation and thus give them opportunity to be heard if they so desire. Accordingly, while it is to be construed with great liberality so as not to embarrass or obstruct needed legislation, liberality of construction should not be extended to such a point as to foster the abuses which its provisions are designed to prevent.

Specifically the majority finds that Section 15 of Act 179, establishing the South Carolina State Farm Development Authority is germane to the general subject of the entire Act, that subject purporting to be the issuance of bonds by various government entities.

The trial court and the majority of this Court overlook the basic issue of the sufficiency of the title of Act No. 179 under Article III, Section 17. The majority opinion provides the full title of the Act as a footnote. The title covers two full pages in the printed Acts of 1981. The following is the sole language used in the title to launch this new government entity into the field of limitless government borrowing:

To amend the 1976 Code by adding to Title 46 Chapter 47, The South Carolina State Family Farm Development Authority Act.

Neither the title nor the subject of Act 179 gives any indication to legislators or the public of the broad powers to issue bonds by the Farm Development Authority. There is no way that the foregoing short provision in the title could have fairly apprised legislators or the general public that Act 179 con-

tained authority for a new agency to issue revenue bonds in an unlimited amount.

Whatever the merits of this undertaking, it can hardly be said that members of the legislature or the public are even dimly apprised of its nature by the title of the Act. The effect of the majority view is, in my opinion, to read out of the Constitution the very important restraints imposed by Article III, Section 17 of the Constitution.

I would reverse the order under appeal, holding that the Act is unconstitutional.

GREGORY, J., concurs.