### 22330

GARY CONCRETE PRODUCTS, INC., Appellant, v. Richard W. RILEY, Governor of South Carolina; Grady L. Patterson, Jr., Treasurer of South Carolina; Earle E. Morris, Jr., Comptroller General of South Carolina; Rembert C. Dennis, Chairman, Senate Finance Committee; and Tom Mangum, Chairman, House Ways and Means Committee, constituting the State Budget and Control Board, Respondents.

(331 S. E. (2d) 335)

Supreme Court

*Thomas H. Pope*, of *Pope and Hudgens*, Newberry, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Joseph A. Wilson,* and *Asst. Atty. Gen. Charles W. Gambrell, Jr.,* Columbia, *for respondents.*

Heard April 8, 1985.

Decided May 20, 1985.

HARWELL, Justice:

The appellant Gary Concrete Products, Inc. initiated this action against the respondent State Budget and Control Board for a declaratory judgment regarding the constitutionality of S. C. Code Ann. § 11-35-1520(9)(d) (1984 Cum. Supp.). We affirm.

The appellant is a Georgia corporation which manufactures and sells reinforced concrete pipe. The appellant was invited to submit bids for state purchases during the year September 1, 1983 through August 31, 1984. On June 30, 1983, the appellant submitted its bid for pipe to be used in twenty-two counties. It was the low bidder in several counties; however, the State awarded the contracts to resident bidders as authorized by Code § 11-35-1520(9)(d) (1984).

We adopt the Order of the trial judge, as amended.

"The issue before this Court is whether or not S. C. Code Ann. § 11-35-1520(9)(d) violates the Commerce Clause of the United States Constitution or, alternatively, violates the Equal Protection Provisions of the United States Constitution or the South Carolina Constitution.

South Carolina Code § 11-35-1520(9)(d) provides:

Competitive procurements made by any governmental body shall be made from a responsive and responsible vendor resident in South Carolina: (i) for procurements under $2,500,000, if such bid does not exceed the lowest qualified bid from a nonresident vendor by more than two percent of the latter bid, and if such resident vendor had made written claim for such preference at the time the bid was submitted; (ii) for procurements in excess of $2,500,000, if such bid does not exceed the lowest qualified bid from a nonresident vendor by more than one percent of the latter bid, and if such resident vendor has made written claim for such preference at the time the bid was submitted. A vendor shall be deemed to be a

resident of this State, if such vendor be an individual, partnership, association or corporation that is authorized to transact business within the State, maintains an office in the State, maintains a representative inventory of commodities on which the bid is submitted and has paid all taxes duly assessed. Preferences under this subsection shall not apply to either prime contractors or subcontractors as relates to the construction industry nor to a vendor of goods whether in quantity or not when the price of a single unit of the item involved is more than ten thousand dollars.

The effect of this section is to give a preference to South Carolinians, under certain circumstances, when the State of South Carolina purchases supplies, services and goods.

## COMMERCE CLAUSE

The appellant alleges that S. C. Code Ann. § 11-35-1520(9)(d) imposes an unlawful burden upon interstate commerce, constituting a violation of Article I, § 8 of the United States Constitution. The Commerce Clause gives the federal government the power to regulate interstate and foreign commerce. The states cannot pass any regulations which unduly burden the free flow of commerce between the states or with a foreign country. *McCaw v. Fase*, 216 F. (2d) 700 (9th Cir. 1954), *cert. denied*, 348 U. S. 927, 75 S. Ct. 340, 99 L. Ed. 727 (1955).

Admittedly, there are circumstances under which S. C. Code § 11-35-1520(9)(d) will operate to favor South Carolina vendors over out-of-state vendors and thereby arguably burden interstate commerce. However, if a state enters a market in competition with other market participants, the Commerce Clause does not limit the state's ability to operate as freely within the market place as the other participants. *Reeves v. Stake*, 447 U. S. 429, 437, 100 S. Ct. 2271, 2277, 65 L. Ed. (2d) 244 (1980). This freedom includes the right to favor the state's own citizens over others. *White v. Mass. Council of Construction Employers*, 460 U. S. 204, 103 S. Ct. 1042, 75 L. Ed. (2d) 1 (1983); *Hughes v. Alexandria Scrap Corp.*, 426 U. S. 794, 96 S. Ct. 2488, 49 L. Ed. (2d) 220 (1976); *Carll v. South Carolina Jobs-Economic Development Authority*, 327 S. E. (2d) 331 (S. C. 1985).

In *Reeves, Inc. v. Stake, supra,* the Supreme Court discussed the rights of a state as a market participant. South Dakota owned and operated a cement plant. In 1978 a cement shortage occurred and the state adopted a policy of supplying all South Dakota customers first and, thereafter, any out-of-state commitments would be met on a first come, first served basis. The plaintiff was an out-of-state distributor who had purchased cement from the South Dakota cement plant on a regular basis for twenty years. The Supreme Court held that the state had acted as a market participant and had not violated the Commerce Clause. It stated that the distinction drawn in *Alexandria Scrap* between states as market participants and market regulators was good law since the Commerce Clause is aimed principally at limiting state taxes and regulatory measures which impede free private trade, but places no similar limitations on the ability of states to operate freely in the open market. *Id.,* 447 U. S. at 437, 100 S. Ct. at 2277. The Court then gave several reasons for judicial restraint in this area.

> Restraint in this area is also counseled by considerations of state sovereignty, the role of each State " 'as guardian and trustee for its people,' " and "the long recognized right of trader or manufacturer, engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." Moreover, state proprietary activities may be, and often are, burdened with the same restrictions imposed on private market participants. Evenhandedness suggests that, when acting as proprietors, States should similarly share existing freedoms from federal constraints, including the inherent limits of the Commerce Clause. Finally, as this case illustrates, the competing considerations in cases involving state proprietary action often will be subtle, complex, politically charged, and difficult to assess under traditional Commerce Clause analysis. Given these factors, *Alexandria Scrap* wisely recognizes that, as a rule, the adjustment of interests in this context is a task better suited for Congress than this Court. [Footnotes and citations omitted.]

*Id.,* 447 U. S. at 438-439, 100 S. Ct. at 2278-2279.

In the instant matter, the State of South Carolina is acting as a market participant by purchasing reinforced concrete pipe. As a market participant, South Carolina can impose restrictions on itself and not run afoul of the Commerce Clause. The present factual situation is virtually on all fours with the *Reeves* decision. South Carolina is preferring its own citizens in the purchasing process — a process which, by definition, vaults South Carolina into the marketplace as a market participant.

The Supreme Court's latest ruling on these issues came in the case of *South-Central Timber Development, Inc. v. Wunnicke,* _____ U. S. _____, 104 S. Ct. 2237, 81 L. Ed. (2d) 71 (1984). The Court held the Alaska requirement that timber taken from state lands be processed within the State prior to export violative of the Commerce Clause. The Court also provided some guidelines.

> The limit of the market-participant doctrine must be that it allows a State to impose burdens on commerce within the market in which it is a participant, but allows it to go no further. The State may not impose conditions, whether by statute, regulation, or contract, that have a substantial regulatory effect outside of that particular market. Unless the "market" is relatively narrowly defined, the doctrine has the potential of swallowing up the rule that States may not impose substantial burdens on interstate commerce even if they act with the permissible State purpose of fostering local industry. *Id.* at 83.

The Court concluded that Alaska was not only a seller in the timber market, but a regulator of the conditions downstream in the timber processing market.

In the case at bar, the State of South Carolina is merely choosing its trading partners so as to favor residents. No regulation of the market is present. Therefore, the preference statute does not violate the Commerce Clause.

## EQUAL PROTECTION

The appellant contends that the "preference" section is unconstitutional as violative of equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, § 3 of the South Carolina Constitution.

The determination of whether a classification is reasonable is initially one for the legislature and will not be set aside by the courts unless it is plainly arbitrary. *State ex rel. Medlock v. S. C. Family Farm Development Authority*, 279 S. C. 316, 321, 306 S. E. (2d) 605, 609 (1983). A statute may be limited to a particular class, provided the limitation established is for a proper public purpose. *Ex parte Hollman*, 79 S. C. 9, 60 S. E. 19 (1908); *Simmons v. Western Union Telegraph Co.*, 63 S. C. 425, 41 S. E. 521 (1902). Although the classification may not be arbitrary and there must be a reasonable relationship between the classification and a proper legislative purpose, *United States Fidelity and Guaranty Co. v. City of Newberry*, 257 S. C. 433, 186 S. E. (2d) 239 (1972), a classification will be sustained against constitutional attack if there is 'any reasonable hypothesis' to support it. *Thomas v. Spartanburg Railway, Gas & Electric Co.*, 100 S. C. 478, 85 S. E. 50 (1915). The South Carolina Supreme Court summarized the controlling principles as follows:

> The requirements of equal protection are satisfied if (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis.

*State ex rel. Medlock v. S. C. Family Farm Development Authority, supra.*

The standard for determination of constitutionality on equal protection grounds under the Fourteenth Amendment was succinctly stated by the United States Supreme Court in *City of New Orleans v. Dukes*, 427 U. S. 297, 96 S. Ct. 2513, 49 L. Ed. (2d) 511 (1976):

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consis-

tently defers to legislative determination as to the desirability of particular statutory discriminations. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economics under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.

... In short, the judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. In the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. [Citations and footnote omitted.]

*Id.* 427 U. S. at 303-304, 96 S. Ct. at 2516-2517. *See* also, *Fidelity Guarantee Mortgage Corp. v. Connecticut Housing Finance Authority,* 532 F. Supp. 81, 83 (D. Conn. 1982).

The classifications established by S. C. Code Ann. § 11-35-1520(9)(d) are between resident and non-resident vendors. The statute is designed to protect South Carolina's legitimate interest in directing benefits, generated by state purchases, to the citizens of South Carolina — "the people who fund the state treasury from which the purchases are made and the people whom the state was created to serve."

According preference to resident bidders encourages local industry, thus stabilizing state and local economies. The money payable under the contracts is likely to remain within the state and enhance the tax base of state and local government. *See Galesburg Constr. Co. v. Bd. of Trustees,* 641 P. (2d) 745 (Wyo. 1982).

The statute is tailored to meet these goals without substantially impeding the goal that state purchases be as economical as possible. S. C. Code Ann. § 11-35-20(f). The preference for residents applies only when their bids are, at most, two percent higher than those of non-residents. In

addition, the preference does not apply to any unit costing $10,000 or more or to prime· or subcontractors in the construction industry.

■ The appellant contends that the statutory definition of residents is irrational because it includes some non-residents. We disagree. The statute authorizes the state to prefer bids of non-residents only when they maintain an office in the state, as well as a representative inventory, and pay all assessed taxes. The differential treatment of the two groups of non-residents is rational because it favors those who pay taxes in South Carolina and who have manifested a desire to do business here. We conclude that the classifications made by § 11-35-1520(9)(d) are rationally related to a legitimate state interest and do not deny equal protection of the laws to non-residents.

The judgment below is, accordingly,

Affirmed.

LITTLEJOHN, C. J., and NESS, J., concur.

GREGORY and CHANDLER, JJ., concur in dissenting opinion.

GREGORY, Justice (dissenting):

I dissent. I would hold the Statute [S. C. Code Ann. § 11-35-1520(9)(d) (Cum. Supp. 1984)] unconstitutional as a violation of equal protection under the State and Federal Constitutions.

The disputed section is in conflict with the entire Procurement Code [S. C. Code Ann. § 11-35-10, *et seq.* (Cum Supp. 1984)]. One of the purposes of the Code is to require competition and fairness in procurement procedures. S. C. Code Ann. § 11-35-20(c) and (e) (Cum. Supp. 1984). Furthermore, the system is designed to maximize economy in the use of state funds. Section 11-35-20(f). To allow the preference of the disputed section to stand is to ignore the basic premise of the Code, thereby increasing the burden on the state treasury and all taxpayers to favor a small select group of South Carolina residents.

Under equal protection, the classification must bear a reasonable relation to the legislative purpose. *State ex rel.*

*Medlock v. S. C. Family Farm Dev. Authority,* 279 S. C. 316, 306 S. E. (2d) 605 (1983). Section 11-35-1520(9)(d) not only fails to meet the reasonable relationship test, but is also in direct conflict with the *express* legislative purposes of the Procurement Code. Section 11-35-20.

I would reverse.

CHANDLER, J., concurs.