507 So.2d 1233 (1987)
BRISTOL STEEL AND IRON WORKS, INC.
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, and Traylor Brothers, Inc., and Williams Brothers Construction Company, Inc. (a Joint Venture).
Nos. 87-C-0720, 87-C-0756.
Supreme Court of Louisiana.
May 22, 1987.
Rehearings Denied June 18, 1987.
Robert E. Winn, Jerome K. Lipsich, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for applicant in No. 87-C-0720.
Robert Couhig, Jr., Paul Pastorek, Rebecca Bush, Philip Becnel, III, Adams & Reese, New Orleans, William Doran, Jr., Frank Gremillion, Norman Sisson, Sharon *1234 Lyles, Baton Rouge, Ronald J. Bertrand, Lake Charles, for respondent in No. 87-C-0720.
Ronald J. Bertrand, Lake Charles, William Doran, Jr., Frank Gremillion, Norman Sisson, Sharon Lyles, Baton Rouge, for applicant in No. 87-C-0756.
Robert Couhig, Jr., Paul Pastorek, Rebecca Bush, Philip Becnel, III, Adams & Reese, Robert Winn, Jerome Lipsich, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for respondent in No. 87-C-0756.
WATSON, Justice.
Bristol Steel and Iron Works, Inc., a Virginia corporation, brought this suit to enjoin a construction contract for the superstructure of the Gramercy Bridge across the Mississippi River, between the Louisiana Department of Transportation and Development and two joint venture contractors, Traylor Brothers, Inc., and Williams Brothers Construction Company, Inc.. The suit also asked for a declaratory judgment that the contract was null and void because: (1) Traylor-Williams was not a Louisiana resident contractor entitled to a five percent preference under LSA-R.S. 38:2225;[1] and (2) the Louisiana residential preference under LSA-R.S. 38:2225 is unconstitutional.
The trial court denied the injunction and dismissed plaintiff's suit. The court of appeal reversed[2] concluding that Traylor-Williams was not a Louisiana resident within the definition in LSA-R.S. 38:2211(A)(7)(a)(iii) and enjoined any further construction. A writ was granted to consider the judgment.[3]
Any "interested party" may bring suit to nullify a contract contrary to the public works laws. LSA-R.S. 38:2220.[4] There were five bids submitted to the Department of Transportation and Development on November 28, 1984:

1. Bristol $ 48,678,235.89
2. Traylor-Williams 43,767,690.00

*1235
3. T.L. James & Company and
 Boh Brothers Construction
 Company, a joint venture $43,808,980.05
4. Pittsburg-Des Moines, Inc. 47,603,810.89
5. Harris Structural Steel, Inc. 47,653,295.89

Although the lowest dollar bidder, Bristol would not necessarily have received the contract even if Traylor-Williams had not qualified for Louisiana's preference. All of the bids could have been rejected for "just cause". LSA-R.S. 38:2214 A(2).[5] T.L. James-Boh Brothers, which are not parties to the suit, might also have been eligible for a five percent preference. Bristol does not necessarily have a beneficial interest in the lawsuit, but it is an "interested party". See Davis v. Franklin Parish School Bd., 412 So.2d 1131 (La.App. 2 Cir., 1982), writ den. 415 So.2d 942 (La., 1982). Thus, Bristol has standing to contest Traylor-Williams' status as a Louisiana resident.
It is conceded that the bridge is over ninety percent complete, i.e., substantially complete. Therefore, injunctive relief is not available to Bristol which: (1) has shown no irreparable injury, LSA-C.C.P. art. 3601;[6] and (2) cannot enjoin a fait accompli. Verdun v. Scallon Brothers Contractors, Inc., 263 La. 1073, 270 So.2d 512 (1972). Therefore, the injunction issued by the court of appeal must be vacated.
Private contracts may not be dissolved when there has been substantial performance. LSA-C.C. art. 2014.[7] There is no corresponding provision in the public works law.
LSA-R.S. 38:2211(A)(7)(a) defines a Louisiana resident contractor as either: (i) an individual residing in Louisiana for at least two years; or (ii) a legal entity whose majority interest is owned by and controlled by residents of Louisiana; or (iii) a legal entity which "[f]or two years prior to bidding has maintained a valid Louisiana contractor's license and has operated a permanent facility in the state of Louisiana and has not had a change in ownership or control throughout those years."
James Douglas Pitcock, Jr., president and board chairman of Williams, testified that there was no change in the control of Williams during the two years preceding the bid, November, 1982 through November, 1984, and no new owners. There were some adjustments in the corporate ownership as the result of a profit sharing plan instituted for Williams' employees, which redistributed some of the stock between the three ownership entities, i.e., James Douglas Pitcock, Jr., Claude K. Williams, and an employee stock bonus plan (ESOP) instituted in 1982. Pitcock is one of the three trustees who vote the ESOP stock. In 1983, Pitcock and Williams decided that the transfer of ownership to the employees through the ESOP did not adequately reward the supervisory personnel, and an arrangement was made to give those personnel twenty percent of the stock through a corporation called Supervisors Equipment Company (SEC). Pitcock and Williams retained pledges of this stock under the security agreement financing the transfer. Pitcock also held proxies for the stock during the relevant period. The supervisory personnel also held stock under the ESOP plan and therefore did not become new *1236 owners between 1982 and 1984. The corporate entity, SEC, became a new owner but its voting rights were held by Pitcock. At the end of November, 1984, Pitcock and Williams still owned outright at least sixty percent of the Williams' stock.
There was no genuine change in Williams' "ownership", under LSA-R.S. 38:2211(A)(7)(a)(iii). Pitcock and Williams controlled the corporation and also owned it for all practical purposes between November of 1982 and November of 1984. A reading of the statute, with consideration of the intended purposes, indicates that transfer of stock to an ESOP and to a corporation to effectuate benefits to employees is not a change of "ownership" under subsection (iii). The court of appeal erred in holding as a matter of law that the circumstances amounted to a change in "ownership" as contemplated by the statute.
It is undisputed that Traylor, the other joint venturer, meets the statutory requirements. The trial court correctly held that the joint venture of Traylor-Williams is eligible under the statute for preference.
Plaintiff also contends that even if Traylor-Williams meets the statutory requirements for preference, the preference itself violates various provisions of the Louisiana and United States Constitutions.
Statutes are presumed to be constitutional. The constitutionality of similar state preference statutes for public contracts has been upheld. See, for example, Galesburg Const. Co. v. Board of Trustees, 641 P.2d 745 (Wyo., 1982); Schrey v. Allison Steel, 75 Ariz. 282, 255 P.2d 604 (1953); Equitable Shipyards, Inc. v. State, Etc., 93 Wash.2d 465, 611 P.2d 396 (1980); Gary Concrete v. Riley, 285 S.C. 498, 331 S.E.2d 335 (1985); and State v. Antonich, 694 P.2d 60 (Wyo., 1985); and, APAC-Mississippi, Inc. v. Deep South Const., 288 Ark. 277, 704 S.W.2d 620 (1986) LSA-R.S. 38:2225 serves a legitimate state interest, i.e., encouraging Louisiana's industries, and is rationally related to advancing that purpose. No persuasive argument has been advanced to justify a finding of unconstitutionality.
For the foregoing reasons, the judgment of the court of appeal is reversed and vacated; injunctive relief is denied and plaintiff's suit is dismissed, all at plaintiff's costs.
REVERSED AND RENDERED.
DENNIS, J., concurs.
MARCUS and LEMMON, JJ., concur and assign reasons.
MARCUS, Justice (concurring).
I agree that Traylor-Williams was a Louisiana resident contractor entitled to a five percent preference under La.R.S. 38:2225 and that said statute is not unconstitutional. Hence, the contract was validly awarded to Traylor-Williams, and Bristol Steel is not entitled to injunctive relief. However, I do not agree with the majority that since the bridge is substantially complete, injunctive relief would not have been available in the event we had found that the contract had been illegally awarded.
Accordingly, I respectfully concur.
LEMMON, Justice, concurring.
I agree that Traylor-Williams qualifies as a Louisiana resident contractor entitled to the preference under La.R.S. 38:2225, within the contemplation of La.R.S. 38:2211A(7) (a)(iii). I further agree that the preference statute is not unconstitutional.
The problem with this case is that a preference is given to an entity owned by residents of Texas and Indiana. However, Subparagraph (iii), unlike Subparagraphs (i) and (ii), does not limit resident contractor status to Louisiana residents and entities owned by Louisiana residents, but rather extends the preference to non-resident entities which may otherwise provide benefits to this state.[1]
*1237 Inasmuch as Bristol is not entitled to injunctive relief on the merits, the majority's discussion of the unavailability of injunctive relief based on substantial completion constitutes dicta.[2] I therefore concur in the result.
NOTES
[1] LSA-R.S. 38:2225 provides:

"A. In the letting of contracts for public work by any public entity, except contracts financed in whole or in part by contributions or loans from any agency of the United States government, preference shall be given to Louisiana resident contractors over nonresident contractors. Any contract awarded by a public entity for the erection, construction, alteration, or repair of any public building or structure or for any public work or improvement for which competitive bidding is not required by law must be awarded to a Louisiana resident contractor, provided there is a Louisiana resident contractor available with the expertise required for the specific job. If competitive bidding is required by law, the contract must be awarded to the Louisiana resident contractor making the lowest responsible bid if the Louisiana resident contractor's bid is not more than five percent higher than the lowest responsible nonresident bid.
"B. If a nonresident contractor bidding on public work in the state of Louisiana is domiciled in a state that provides a percentage preference in favor of contractors domiciled in that state over Louisiana resident contractors for the same type of work, then every Louisiana resident contractor shall be granted the same preference over contractors domiciled in the other state favoring contractors domiciled therein whenever the nonresident contractor bids on public work in Louisiana.
"C. Any local law, either by legislative act or otherwise, ordinance, or executive order enacted prior to the effective date of this Act, or enacted hereinafter in conflict with this Section, or granting any local contractor or subcontractor preference over other Louisiana resident contractors shall be contrary to the provision of this Section.
"D. The provisions and requirements of this Section shall not be waived by any public entity."
[2] 504 So.2d 941 (La.App. 1 Cir.1987).
[3] 505 So.2d 1131, 1132 (La., 1987).
[4] LSA-R.S. 38:2220 provides:

"A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.
"B. The district attorney in whose district a violation of this Part occurs, the attorney general or any interested party possessed a right of action to bring suit for appropriate injunctive relief in the district court to nullify a contract entered into in violation of this Part.
"C. Where a judgment of nullity is rendered in any action brought by a district attorney or by the attorney general pursuant to Subsection B of this Section the district court may award a civil penalty not in excess of fifty thousand dollars against each offending member of the governing authority of the public entity who authorized the violation."
[5] LSA-R.S. 38:2214 A(2) states:

"A.(2) The public entity may reject any and all bids for just cause. * * *"
[6] LSA-C.C.P. art. 3601 provides in pertinent part:

"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; provided, however, that no court shall have jurisdiction to issue, or cause to be issued, any temporary restraining order, preliminary injunction, or permanent injunction against any state department, board or agency, or any officer, administrator or head thereof, or any officer of the State of Louisiana in any suit involving the expenditure of public funds under any statute or law of this state to compel the expenditure of state funds when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature."
[7] LSA-C.C. art. 2014 states:

"A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee."
[1] Subparagraph (iii) was perhaps designed to encourage reputable out-of-state contractors to qualify for and maintain a Louisiana contractor's license and to maintain a permanent place of business in Louisiana. Such a concession arguably benefits the state by way of tax revenues and local employment, as well as by encouraging a greater number of highly qualified firms to bid regularly on substantial and important construction projects, despite the fact that the profits of the construction contracts may flow to residents of other states. (Of course, Bristol could also have qualified for the preference by maintaining a contractor's license and a place of business in Louisiana for the two years preceding the bidding.) Perhaps the Legislature should have enacted a more narrowly defined preference statute that would have benefitted Louisiana individual and corporate contractors directly, but the enactment of the broader preference statute was still within legislative discretion as rationally related to a legitimate state objective.
[2] This frequently occurring problem in public construction contract cases is generally caused by the lag time between the judgment in the trial court and the judgment in the court of appeal. There is an apparent need for legislative action providing a limitation on the time for filing injunctions (as, for example, by requiring any injunction to be filed during a period of fifteen or thirty days between the awarding of the bid and the execution of the contract) and an expedited procedure for disposition of appeals by preference over other cases. (Such legislation might also include a requirement that the governmental authority, at the time of awarding a bid to other than the low bidder, must state the reasons in writing, thereby facilitating the requirement for filing injunctions within a limited period.)